# United States District Court
for the
# Eastern District of New York

CV 24 8614

| | |
|---|---|
| **VERONICA HERNANDEZ**<br>**PLAINTIFF** | **Case No.**______________ |
| | **CHOUDHURY, J.** |
| **ANTHONY HERNANDEZ, P.O. E. AMAYA #6916, SGT. RACIOPPO, SGT. MCHUGH, FEMALE CAUCASIAN OFFICER DOE, RODNET K. HARRISON, SUFFOLK COUNTY POLICE DEPARTMENT, LONG ISLAND COMMUNITY HOSPITAL, DR. DONI MARIE RIVAS, FEMALE ASIAN NURSE DOE, FEMALE CAUCASIAN LICH EMPLOYEE DOE, FEMALE CAUCASIAN LICJH SECURITY DOE, MALE AFRICAN AMERICAN SECURITY DOE, MALE AFRICAN AMERICAN LICH ORDERLY, ELLEN MULLALLY, RICHARD T. MARGULIS DEBRA GRIMM, LICH CLINICAL LEADERSHIP LICH SECTION 1557 COORDINATOR, NYU LANGONE HALTH SYSTEM & HOSPITALS**<br>**DEFENDANTS** | **CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C. §1983**<br>TISCIONE, M.J.<br><br>**JURY TRIAL DEMANDED**<br><br>FILED<br>IN CLERK'S OFFICE<br>U.S. DISTRICT COURT E.D.N.Y.<br>★ DEC 17 2024 ★<br>LONG ISLAND OFFICE |

## The Parties to This Complaint

### A. PLAINTIFF

**Name: Veronica Hernandez**
Street Address: 35 Lillian Place
City and County: Patchogue, Suffolk County
State and Zip Code: New York, 11772
Telephone Number: 718-644-9888
E-mail Address: Ronnie@OurTurnNow.com

RECEIVED
DEC 17 2024
EDNY PRO SE OFFICE

### B. DEFENDANTS

**Defendant No. 1**
**Name: Anthony Hernandez**
Job or Title: Retired

REC'D IN PRO SE OFFICE
DEC 17 '24 PM3:37

Street Address: 434 Renee Drive
City and County: Bayport, Suffolk County
State and Zip Code: New York, 11705
Telephone Number: 631-241-2223
E-Mail Address: TonyIBEW@Aol.com

**Defendant No. 2**
**Name: E. Amaya Badge #6916**
Job or Title: Police Officer
Location: Suffolk County Police Department 5th Precinct
Street Address: 125 Waverly Avenue
City and County: Patchogue, Suffolk County
State and Zip Code: New York, 11772
Telephone Number: 631-854-8500
E-Mail Address:

**Defendant No. 3**
**Name: Racioppo**
Job or Title: Seargent
Location: Suffolk County Police Department 5th Precinct
Street Address: 125 Waverly Avenue
City and County: Patchogue, Suffolk County
State and Zip Code: New York, 11772
Telephone Number: 631-854-8500
E-Mail Address:

**Defendant No. 4**
**Name: McHugh**
**Job or Title: Desk Seargeant**
Location: Suffolk County Police Department 5th Precinct
Street Address: 125 Waverly Avenue
City and County: Patchogue, Suffolk County
State and Zip Code: New York, 11772
Telephone Number: 631-854-8500
E-Mail Address:

**Defendant No. 5**
**Name: Unidentified Caucasion Female Officer**
Job or Title: Unknown Rank (Domestic Violence)
Location: Suffolk County Police Department 5th Precinct
Street Address: 125 Waverly Avenue
City and County: Patchogue, Suffolk County
State and Zip Code: New York, 11772
Telephone Number: 631-854-8500

E-Mail Address:

**Defendant No. 6**
**Name: Rodney K. Harrison**
Job or Title: Former Suffolk County Police Commissioner
Location: Suffolk County Police Department
Street Address: 30 Yaphank Avenue
City and County: Yaphank, Suffolk County
State and Zip Code: New York, 11980
Telephone Number: 631-854-8500
E-Mail Address:

**Defendant No. 7**
**Name: Suffolk County Police Department**
Location: Suffolk County Police Department
Street Address: 30 Yaphank Avenue
City and County: Yaphank, Suffolk County
State and Zip Code: New York, 11980
Telephone Number: 631-854-8500
E-Mail Address:

**Defendant No. 8**
**Name: Long Island Community Hospital**
Location: Suffolk Long Island Community Hospital
Street Address: 101 Hospital Road
City and County: Patchogue, Suffolk County
State and Zip Code: New York, 11772
Telephone Number: 631-854-8500
E-Mail Address:

**Defendant No. 9**
**Name: Dr. Doni Marie Rivas D.O.**
Job or Title: E.R. Physician
Location: Long Island Community Hospital
Street Address: 101 Hospital Road
City and County: Patchogue, Suffolk County
State and Zip Code: New York, 11772
Telephone Number: 631-854-8500
E-Mail Address:

**Defendant No. 10**
**Name: Unknown name Asian (looking) female who discharged me from LICH**
Job or Title: Nurse **(Appears on video recording)**
Location: Suffolk County Police Department

Street Address: 150 West Main Street
City and County: Patchogue, Suffolk County
State and Zip Code: New York, 11772
Telephone Number: 631-654-7100
E-Mail Address:

**Defendant No. 11**
**Name: Unidentified Caucasian Female**
Job or Title: Unknown (Perhaps Security Supervisor) **(Appears on video recording)**
Location: Long Island Community Hospital
Street Address: 150 West Main Street
City and County: Patchogue, Suffolk County
State and Zip Code: New York, 11772
Telephone Number: 631-654-7100
E-Mail Address:

**Defendant No. 12**
**Name: Unidentified Caucasian Female**
Job or Title: Security Guard **(Appears on video recording)**
Location: Long Island Community Hospital
Street Address: 150 West Main Street
City and County: Patchogue, Suffolk County
State and Zip Code: New York, 11772
Telephone Number: 631-654-7100
E-Mail Address:

**Defendant No. 13**
**Name: Unidentified African American Male**
Job or Title: Security Guard
Location: Long Island Community Hospital
Street Address: 101 Hospital Road
City and County: Patchogue, Suffolk County
State and Zip Code: New York, 11772
Telephone Number: 631-654-7100
E-Mail Address:

**Defendant No. 14**
**Name: Unidentified African American Male**
Job or Title: Title Unknown, wearing scrubs (orderly?)
Location: Long Island Community Hospital
Street Address: 101 Hospital Road
City and County: Patchogue, Suffolk County
State and Zip Code: New York, 11772
Telephone Number: 631-654-7100

E-Mail Address:

**Defendant No. 15**
**Name: Ellen Mulally**
Job or Title: Vice President of Performance Improvement
Location: Long Island Community Hospital
Street Address: 101 Hospital Road
City and County: Patchogue, Suffolk County
State and Zip Code: New York, 11772
Telephone Number: 631-654-7100
E-Mail Address:

**Defendant No. 16**
**Name: Richard T. Margulis**
Job or Title: President and Chief Executive Officer
Location: Long Island Community Hospital
Street Address: 101 Hospital Road
City and County: Patchogue, Suffolk County
State and Zip Code: New York, 11772
Telephone Number: 631-654-7100
E-Mail Address:

**Defendant No. 17**
**Name: Debra Grimm, DNP, MS, RN**
Job or Title: Vice President and Chief Nursing Officer
Location: Long Island Community Hospital
Street Address: 101 Hospital Road
City and County: Patchogue, Suffolk County
State and Zip Code: New York, 11772
Telephone Number: 631-654-7100
E-Mail Address:

**Defendant No. 18**
**Name: Unidentified Staff Member(s) who "investigated" events of 10/29/22**
Job or Title: "Clinical Leadership Team"
Location: Long Island Community Hospital
Street Address: 101 Hospital Road
City and County: Patchogue, Suffolk County
State and Zip Code: New York, 11772
Telephone Number: 631-654-7100

**Defendant No. 19**
**Name: Section 1557 Coordinator**

Job or Title: Corporate Compliance Office
Location: Long Island Community Hospital
Street Address: 101 Hospital Road
City and County: Patchogue, Suffolk County
State and Zip Code: New York, 11772
Telephone Number: 631-654-7100

**Defendant No. 20**
**Name: NYU Langone Health System and Hospitals**
Location: Suffolk Long Island Community Hospital
Street Address: 101 Hospital Road
City and County: Patchogue, Suffolk County
State and Zip Code: New York, 11772
Telephone Number: 631-854-8500
E-Mail Address:

## The nature of the claim is:

**Slander Per Se**
**Libel Per Se**
**Slander Per Quod**
**Libel Per Quod**
**Retaliation**
**Disability Discrimination**
**Intentional Infliction of Emotional Distress**
**Negligent Infliction of Emotional Distress**
**Breach of Duty of Care**
**Obstruction of Justice**
**ADA Title II**

## Jurisdiction

**18 U.S.C. § 242 Deprivation of Rights Under Color of Law***

*Though Anthony Hernandez (Defendant 1) did not act in any capacity that would be considered "Under Color of Law", private individuals may be liable under Section 1983 if they engage in joint action or conspire with government officials to violate someone's constitutionally protected rights.

Furthermore, the false, defamatory statements made by Anthony were the catalyst for all constitutional violations that occurred thereafter. I believe his initial contribution meets the level of involvement needed for § 1983 liability under the integral-participant doctrine. An actor may be deemed to have caused a constitutional violation under the "integral-participant doctrine," "only if (1) the defendant knew about and acquiesced in the constitutionally defective

conduct as part of a common plan with those whose conduct constituted the violation, or (2) the defendant set in motion a series of acts by others which the defendant knew or reasonably should have known would cause others to inflict the constitutional injury."

Likewise, though Officer Amaya was not an active participant in the events that unfolded while I was in the care of Long Island Community Hospital, the false, defamatory information obtained from Anthony that he then conveyed to the ER staff was the basis for their mistaken beliefs, deprivation of services and all other constitutional violations. Those initial acts were so closely related to every act committed thereafter in the furtherance of the deprivation of my rights as to be the moving force that caused the ultimate injury as well as constituting a conspiracy by all participants therein.

A person "subjects" another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.

**Americans with Disabilities Act of 1990 42 U.S.C. §§ 12101 et seq**
**And subsequent amendments The ADAAA (Pub. L. 110-325)**

**ADA Title II: State and Local Government Activities****

**Long Island Community Hospital leases retail space in the lobby of their building thus meets the ADA definition of a public accommodation.

**Title III (42 U.S.C. § 12181). "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who . . . operates a place of public accommodation."**

**A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities. (42 U.S.C. § 12182(b)(2)(A)(ii)).)**

**The Rehabilitation Act**

**Section 504 of the Rehabilitation Act of 1973, as amended 29 U.S.C. § 794**

**Provisions against Conspiracies to Deprive Citizens of Rights (18 U.S.C. § 241)**

No persons shall have the right to deprive or even conspire to deprive another person of his/her rights. 18 U.S.C. § 241 prohibits all kinds of interferences with the rights of an individual that has been secured by the individual through the United States Constitution or through any other laws of the United States.

By virtue of 18 U.S.C. § 241, it is a federal crime for two or more persons to conspire to injure, oppress, threaten, or intimidate any person in any state, territory, commonwealth, possession, or district in the free exercise or enjoyment of any right or privilege secured to him/her by the Constitution or laws of the United States.

Unlike most conspiracy statutes, §241 does not require, as an element, the commission of an overt act.

**Title 18 U.S.C. § 245 Violent Interference with Federally Protected Rights**

**The COVID-19 Hate Crimes Act, 34 U.S.C. § 30501**

## The time when, the place where and the manner in which the claim arose:

The inciting incident occurred on October 29, 2022, at or about 7:30 PM at
35 Lillian Place, Patchogue, New York 11772
Officer Amaya of Suffolk County Police Department's 5th precinct responded to Veronica Hernandez's 911 call to report being poisoned by Anthony Hernandez

and
**On October 29, 2022, at or about 9:00** PM at
Long Island Community Hospital, 101 Hospital Road, Patchogue, New York 11772
Officer Amaya came to the hospital to bring and have me sign Domestic Incident Report

And
**On November 11, 2022, on or about 2:00** PM at
Suffolk County Police Station 5Th Precinct, 125 Waverly Avenue, Patchogue, New York 11772
I, Veronica Hernandez, visited SCPD's 5th Precinct, spoke with Commanding Officers and delivered documents containing a Formal Written Complaint about P.O. Amaya, a corrected Statement of Allegations and other pertinent information.

And
On November 11, 2022, on or about 6:26 PM at
35 Lillian Place, Patchogue, New York 11772

Officer Amaya was the office dispatched in response to Veronica Hernandez's 911 call to report Domestic Violence perpetrated by Anthony Hernandez

And
On November 20, 2022, on or about 4:00 PM at
35 Lillian Place, Patchogue, New York 11772
Large Envelope containing a copy of the formal complaint and statement(s) was dispatched by Veronica Hernandez via USPS Priority Mail to Suffolk County Police Department, 5th Precinct, 125 Waverly Avenue, Patchogue, New York 11772. Tracking No: 941080369930015561

And
On November 20, 2022, on or about 8:00 PM at
35 Lillian Place, Patchogue, New York 11772
Large Envelope containing A summary of incidents and interactions with SCPD, a copy of the formal complaint and statement(s) was dispatched by Veronica Hernandez via UPS to Rodney K. Harrison, Suffolk County Police Commissioner, 30 Yaphank Avenue, Yaphank, New York 11980. Tracking No: 1Z47TV944292142079

And

On December 12, 2022
A formal grievance under Section 1557 of the Affordable Care Act was delivered to:
Section 1157 Coordinator
Corporate Compliance Office
Long Island Community Hospital
101 Hospital Road
Patchogue, New York 11772
Via UPS tracking #1Z47TV944295204443

And
On December 12, 2022
A correspondence containing a copy of the formal grievance filed under Section 1557 of the Affordable Care Act addressed to the Section 1157 Coordinator of Long Island Community Hospital's Corporate Compliance Office, a detailed summary of events together with documentation of the emergency treatment and diagnosis and Domestic Violence police reports attached was delivered to:
Richard T. Margulis
President and Chief Executive Officer
Long Island Community Hospital
101 Hospital Road
Patchogue, New York 11772
via UPS tracking #1Z39677T4290718159

And

On December 12, 2022
A correspondence containing a copy of the formal grievance filed under Section 1557 of the Affordable Care Act addressed to the Section 1157 Coordinator of Long Island Community Hospital's Corporate Compliance Office, a detailed summary of events together with documentation of the emergency treatment and diagnosis and Domestic Violence police reports attached was delivered to:
Debra Grimm
Vice President/Chief Nursing Officer
Long Island Community Hospital
101 Hospital Road
Patchogue, New York 11772
via UPS tracking #1Z39677T4295914268

And
On December 19, 2022
I received a correspondence from Ellen Mullally whose title at Long Island Community Hospital is Vice President Performance Improvement in the mail at my home:
35 Lillian Place, Patchogue, New York, 11772.

And
On January 3, 2023 a correspondence regarding a letter I received from Ellen Mullally, Vice President Performance Improvement and his failure to respond to a previous correspondence from me was delivered to:
Richard T. Margulis
President and Chief Executive Officer
Long Island Community Hospital
101 Hospital Road
Patchogue, New York 11772
via UPS tracking #1Z5AR1260224048006

And
In or about mid August 2024 I called the Suffolk County Police Department (911) to report that there was an unknown inebriated Hispanic male sitting on my neighbor's lawn at 36 Lillian Place, Patchogue New York, 11772 (directly across the street from my home) drinking alcohol. That he was creating a disturbance (causing my dogs to bark incessantly) and that I was uncomfortable with him lingering without cause.

## Causes of Action

## SLANDER PER SE

## LIBEL PER SE

## DEFAMATION PER QUOD

1. Police Officer E. Amaya (5th precinct, #6916), **DEFENDANT #2**, of the Suffolk County Police Department responded to my call to 911 to report that I was the victim of Domestic Violence.

2. My husband, Anthony Hernandez (**DEFENDANT #1**) had been poisoning my food with Rid-X (among other substances intermittently) for over a year and the symptoms I was exhibiting were such that I needed medical care.

3. Officer Amaya remained at my home with Anthony while I was transported to the Long Island Community Hospital by ambulance.

4. Upon information and belief, Anthony advised Officer Amaya that I am "mentally ill" and provided an explanation for the virulent infection he knew would be discovered when I was examined as the substance he had been feeding me is "100% natural active septic tank bacteria and enzymes".

5. Officer Amaya then, without fact checking or allowing me to rebut that slander, came to the hospital and conveyed the false, information to the hospital staff.

6. While there Defendant #2 came into the room I was given in the ER and said to me, "Now that I know what's going on I'll know how to handle this if you need to call back again".

7. Upon information and belief, Defendant #2 provided the medical staff tending to me in the E.R. with alternative causation so that even though the I was diagnosed with Acute Pharyngitis, which is in alignment with my having been fed Rid-X; though the infection and scarring in my mouth and throat were consistent with having been chronically poisoned with RidX, the source of the infection was listed as "unspecified" in the medical record and the discharge documentation.

8. Though I repeatedly advised that the substance was not alkaline but organic (and brought the what was left of the product to the hospital, so that they would a) understand what I was referring to and b) test for it in my system, Defendants #2,

9. Neither the hospital nor the Suffolk County Police Dept. followed the domestic violence protocol except to the extent that a DOMESTIC INCIDENT REPORT was created. Incident # 22-640000 Complaint # 512.

10. In the DIR section titled Incident Narrative, where asked to briefly describe the circumstances of this incident, Defendant #2 states,

"P. states she has been having an irritation in her throat for about a year now. P. believes her husband P2. Has been putting chemicals in her food, possibly P2. Tampering with her food. North Patchogue Ambulance see no obvious sign of swelling."

11. In a correspondence dated December 15, 2022 **DEFENDANT #15**, Ellen Mullally, Vice President of Performance Improvement at Long Island Community Hospital asserted, "Assessment of your throat and lab work did not support alleged chemical ingestion."

12. The presence of obvious signs of a virulent infection in my mouth and throat, later diagnosed as Pharyngitis was not in alignment with having been poisoned with chemical septic tank cleaner because I wasn't poisoned with chemical septic tank cleaner, nor had I ever claimed to have been.

13. The virulent infection in my mouth and throat was, however, in complete alignment with the explanation given to Defendant #2 by Defendant # 1.

14. Upon information and belief Defendant #1 advised Defendant #2 of my having engaged in rampant, unspeakably promiscuous behavior with random men, thereby making my mouth and throat accessible and susceptible to severe and chronic bacterial infection.

15. The narrative created by my symptoms not being the result of Defendant #1's attempts to end my life but rather my own moral failing and/or mental unwellness is not only patently false but obscenely defamatory.

16. Having conducted no investigation at all, with nothing in my appearance or demeanor that fits the profile of a mentally damaged woman with no self-worth but rather, relying on the "look in my eyes" and the word of the accused, in complete disregard for the damage it would cause to my reputation and the way I would be perceived and treated by the hospital personnel, and anyone else coming to know of the slanderous allegations in the future, Defendant #2 disseminated information accepted as factual that was then made a matter of public record in both police reports and hospital records.

17. The statements intentionally conveyed by Defendant #1 for the purpose of  deflect his guilt and for Defendant #2 to rebut my allegation and influence the service rendered unto me by the hospital immediately subjected me to distrust, ridicule, disgrace and contempt.

18. **DEFENDANT # 9**, Dr. Doni Marie Rivas relied on the defamatory information provided by Defendant #2 to rule out alternative causation. She was dismissive and impatient never hearing me out when I tried to explain what happened nor was I able to show her what was left of the RidX.

19. The symptoms I was experiencing i.e., nose bleeds, earaches, thrush, my fingernails were dark and brittle, my breath was rancid, scarring on my palate and throat, etc. were too severe to have come from passive activity.

20. They were a clear indication that for an extended period of time my mouth and throat were consistently coming into contact with bacteria that continuously re-infected the tissue in my mouth and throat.

21. There were (**ARE**) absolutely no marks, legions, rash, blisters, sores or any other topical injury to my face, lips, eyes etc. nor are there any scars to indicate that any part of my face, or lips have **EVER** been the site of such.

22. I am completely disease free and do not currently or ever have in the past had **ANY** sexually transmitted illness.

23. My assertions that I had been chronically poisoned with RidX by Defendant #1 and there being no external physical evidence to support that the bacteria causing my chronic infections was in contact with any other part of my body or face before entering my mouth and throat notwithstanding, Defendant #9 made the determination that this was not a domestic violence related situation.

24. In her letter to me on December 15, 2022 Ellen Mullally indicates:
"The investigation was completed by our clinical leadership team (**DEFENDANT(S) #18**). We are very sorry that you feel your allegations of attempted poisoning by your husband were not adequately addressed................For these reasons, the physician did not consider this an incidence or evidence of domestic violence."

25. The inference made by ruling out my husband poisoning me with RidX as the cause of my severe bacterial infections and, therefore not treating my situation as a domestic violence incident was Defamation Per Quod.

26. Though there was substantially convincing evidence to corroborate my allegations against Defendant #1 and therefore warrant his arrest, based on the SUSPECT's rebuttal, with no further investigation, Officer Amaya determined that "no crime was committed".
27. The discharge nurse **DEFENDANT #10** alerted that there was a "code gray" situation when I objected to being discharged without and domestic violence protocol or precautions in place and began to record (document) the crime being committed against me.

28. Those responding to that alert, **DEFENDANTS #11, #12 and #13** responded wearing disposable gloves intending to engage me physically.

29. Defendant #13 stood over me menacing while I was seated wearing disposable gloves and holding a black device in his hand that appeared to be a taser. When I reacted to being threatened that way Defendant #13 responded, "I didn't say anything to you. You have issues."

30. When I was exiting the hospital Defendants #13 and #14 attacked me at the revolving door dragged me down to the ground and took a phone they believed to be the one used to record the earlier confrontation.

31. Ultimately, all the records with regard to the events of October 29-30, 2022; police reports created by , medical reports, security incident reports, reflect that a mentally unsound woman who created a disturbance and had to be restrained and removed from the premises by security had an acute bacterial infection in her mouth, the cause of which is unspecified.

32.Upon visiting the police station on November 11, 2022 to file a formal complaint I spoke directly to **DEFENDANTS #3 and #4** and asked to speak to **DEFENDANT #5** but, though she is the officer specifically assigned to handle domestic violence cases, was refused and when I insisted that they review the determination made by Defendant #2 I was again told that "No crime was committed" and therefore the case was closed.

33. **DEFENDANTS #6 (Rodney K Harrison), #7 (SCPD), #16 Richard T. Margulis), #17 Debra Grimm, DNP, MS, RN), and #19 (Section 1557 Coordinator)**'s failure to acknowledge or respond to correspondences I sent to them with regard to this incident, corroborated the fact that there was no crime committed against me and no failure on anyone's part to perform a duty or provide services according to the Domestic Violence Statutes, New York Penal Code or US Constitution.

34. **DEFENDANT #8**, Long Island Community Hospital and **Defendant #20**, NYU Langone Health System and Hospital and Defendant #7, Suffolk County Police Department have, apparently, failed to train their staff with regard to the Domestic Violence protocol.

35. The municipality and entities that govern LICH have facilitated and condoned practices and customs and created a culture that holds those they perceive to be "mentally ill" in very low esteem diminishing the credibility of any assertions *we* make, determining *we* are unworthy of concern or compassion and have given final decision making authority to the Defendants of higher rank within the police Department (Defendants #3, #4, and #6) and Defendants who are Executive Officers within Long Island Community Hospital (Defendants #15, #16 and #17 so that when those individuals themselves commit offenses against individuals like myself or fail to respond or intervene in matters like this, the injured are left with no recourse and the offenders are not held accountable.

36. The ultimate consensus being that there was no crime committed and no immediate services, precautions or follow-up activity implies that the symptoms I presented with on October 29, 2022 were caused by the only other possible explanation for such severe, recurring infections and the residual scarring in my mouth and throat.

37. The Defendants have either made direct accusations of moral turpitude, serious sexual misconduct and/or the level of mental impairment that gives rise to the same or made

determinations that infer as much when any other possible explanation is excluded or ignored. Their spoken slander has been converted to libelous documentation that is now of public record indicating that along with my being of such poor character I am routinely riddled with infectious, contagious conditions acquired through my depraved proclivities.

38. These false allegations have caused me to be treated with disgust and contempt. They have diminished my standing in the community and subjected me to sexual harassment, disgrace and alienation.

39. In July of 2022 I was registered as a congressional candidate in the November 8, 2022 General Election in New York.

40. I was comfortable with having my life examined under a microscope with no fear of anything untoward being exposed because my reputation as a good, clean, self-respecting, responsible, mentally and physically capable woman was beyond reproach. I HAD AN AMAZINGLY BLESSED FUTURE AHEAD OF ME.

41. Just 3 months later, 9 days shy of that election, I was reduced to a tragic, self-loathing imbecile with no social worth or standing. I have been reduced to someone who is a threat to myself and others whose very existence can be canceled and everything I own and all that I should have to look forward to taken from me based on these defamatory statements and written documentation.

42. In the letter previously referenced, Dated December 15, 2022, written by Ellen Mullally she describes me, someone she had never met, as being severely emotionally unwell. In the same hospital just 5 short months later, I served as the Health Proxy and Power of Attorney for Anthony Hernandez (Defendant #1) while he was on life support for 16 days with 4 failed organs (Kidney, Liver, Lungs and pancreas). Then the Doctors and other hospital staff actually saw me and interacted with me directly. Dr. Qadir briefed me daily and it was I who authorized Anthony's many procedures, treatments and surgeries including intubation and daily dialysis. By no means did I appear to be, behave as if or was I perceived to be mentally and/or emotionally unwell. Not "severely" or otherwise. There is a big difference between being having a psychiatric diagnosis and being mentally ill. In absence of behavior and processes that indicate the latter, one chemical imbalance in any organ that is well managed by medication is no better or worse than another. To believe otherwise is simply ignorant. To say and write otherwise is defamation.

43. The emotional and financial damage these defendants ave caused me is obscene. They have destroyed my entire legacy.

## OBSTRUCTION OF JUSTICE

44. Unsatisfied with **DEFENDANT #2**'s handling of my report, I subsequently, on November 11, 2022, visited the 5th precinct police station to speak to a higher-ranking officer and deliver a

formal written complaint wherein I went into great detail about the trauma I experienced resulting from Officer Amaya's actions.

45. In the complaint I advised of the blatantly indifferent statements Officer Amaya made at my home, the numerous ways that he falsified the documentation including, not allowing me to write the STATEMENT OF ALLEGATION/SUPPORTING DEPOSITION in my own words forcing me to sign his account of the events and answering "no" to questions intended for my response, such as, "Is the suspect capable of killing you or children?" when my allegation was long term poisoning.

46. In my written complaint (delivered 12 days after the incident) I also advised that P.O. Amaya falsely indicated, in writing on the STATEMENT OF ALLEGATION/SUPPORTING DEPOSITION that there had been a "Prior verbal dispute regarding affair cc#297141" which is patently false as the dispute, in which Anthony was the aggressor, was about my getting a tattoo without his "permission".

47. There had been no affair nor mention of one.

48. The precinct actually has an officer specifically assigned to handle Domestic Violence **DEFENDANT# 5**, she walked right past me and I was instead assisted by a civilian young lady.

49. When I explained to the officer at the front desk **DEFENDANT #4** Seargeant McHugh, he said "The case is closed because no crime was committed".

50. Not accepting that I asked to speak to someone else and **DEFENDANT #3** Seargeant Racioppo approached and though he did accept the written complaint and supporting documents I handed directly to him, he walked away with them, and never returned.

51. After sitting and waiting nearly half hour (during which time the Domestic Violence Officer walked out and looked in my direction but did not approach or acknowledge me, instead simply exiting the building) I walked back up to the desk and against his wishes, left yet another copy of my complaint and attached documentation with Desk Seargeant McHugh.

52. On November 20, 2022 I sent it a copy of it to Suffolk County Police Dept., 125 Waverly Ave, Patchogue, NY 11772 via Priority Mail.

53. Likewise, I sent a copy to then Suffolk County Police Commissioner, Rodney K. Harrison, 30 Yaphank Road, Yaphank, NY 11980.

## RETALIATION

**The Americans with Disabilities Act (ADA) protects individuals with disabilities from retaliation for, and interference in, exercising their rights under Title I, II and III of the law. Retaliation**

**and interference are distinct forms of discrimination under the ADA and the rights of individuals to be free from retaliation and interference are in addition to the other rights under the law.**

**No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter. 42 U.S.C. §12203(a).**

54. As indicated above, on the afternoon of the 11th of November 2022 I delivered a formal complaint to SCPD against Officer Amaya in which I detailed numerous instances of misconduct and perjury and demanded disciplinary actions be initiated.

55. Later that evening I returned home with fast food for myself and Anthony, who was completely inebriated, confronted me violently screaming in my face because I had not brought food for him as well.

56. Empowered by SCPD's failure to arrest him for the allegation I made against him on October 29, 2022 Defendant #1 had become increasingly belligerent and confrontational.

57. I called the police and to my surprise Officer Amaya **DEFENDANT #2** was the responding officer.

58. I have lived in my home fat 35 Lillian Place in Patchogue (5th police precinct) for 16 years opposite a family with a son who struggles with severe drug Addiction, necessitating 911 calls for medical intervention and/or domestic violence so I am well aware of SCPD's typical response time.

59. Furthermore, The New York State Law Enforcement Domestic Incident Model Policy requires:

**IV. Communications Procedures**

**A. Call Priority: All domestic incident calls shall be handled as high priority.**

**B. Staff assigned to communications functions will, where practicable, dispatch at least two responding officers to domestic incidents.**

60. Yet, On the evening of November 11th when I called the police, again, to report that Anthony was intoxicated and threatening my safety with verbal abuse and orders for me to "Get the F**K out", the response was unusually long, close to 30 minutes as opposed to the average 5-10.

61. And the officer that finally arrived was Officer Amaya whom just a few hours earlier the same day was the subject of a scathing complaint wherein I revealed offenses and departures from policy and demanded, at the very least, disciplinary action. And there he was at my door with a gun.

62. I believe that was purposely coordinated by SCPD to undermine and intimidate me.

63. It was absolutely inappropriate for him to be the responding officer.

64. It can't be denied that it was reasonably foreseeable that Officer Amaya at my door, given the very recent events, would be extremely intimidating and a violation of civil rights laws against retaliation.

65. My complaint triggered a conflict of interest that that should have prompted a protocol that prevents an already unpredictable dynamic from becoming perilous.

66. Again, or more so, I felt defeated and unprotected.

67. Worst even, it was an indication to me and Defendant #1 that the police had taken position against me.

68. I endured 3 months of unspeakable toxicity at home with Anthony following the events of October 29th and November 11, 2022 still experiencing many of the same symptoms knowing that calling for "help" was the worse of the 2 poisons.

69. I should never have been put in that situation. Mental illness is painted with big strokes but the symptoms vary widely and are far from mutually inclusive. The rules not applying to me and the SCPD becoming my opposition, having no access to the court and therefore no avenue for redress, made me prey.

70. With regard to Officer Amaya coming/being sent to my home after me filing my written complaint, I feel that it is very necessary to note that, historically, interactions between the police and the those identified as "mentally ill" are more prone to end in unwarranted tragedy. Under the best of circumstances, there is added unpredictability.

71. The amplification of the inherent imbalance of power that was purposely exploited by DEFENDANT #1 and apparently condoned by the officer who dispatched him to the scene created a volatile situation.

72. **DEFENDANT #7** is not only liable for the intimidation caused by not protecting me from the trauma caused by being confronted by the armed officer I had just filed a complaint against but also for my reluctance to contact the police when other situations have presented themselves since.

73. The situation that occurred In or about mid August 2024 when I called the Suffolk County Police Department (911) to report that there was an unknown inebriated Hispanic male sitting on my neighbor's lawn at 36 Lillian Place, Patchogue New York, 11772 (directly across the street from my home) drinking alcohol is another example of Defendant 7's fascilitation of a rogue culture where a VICTIM can be terrorized and/or left unprotected at the whim of its officers.

74. The man was creating a disturbance (causing my dogs to bark incessantly) and I was uncomfortable with him lingering without cause.

75. Given the many other incidents, it was not unreasonable for me to feel threatened.

76. Furthermore, I am a taxpaying homeowner and Citizen of the United States who has a right to feel safe anywhere I am in this country but most certainly in my home.

77. I am a woman living alone now who could be the wife, mother, sister or any female loved one of the officers made aware of my distress. I am due the same protection as anyone else.

78. Yet the police drove onto my street and saw me standing on my porch but did not acknowledge or approach me.

79. They pulled in front of the man on the other side of the street (the police car was facing the wrong way of traffic) who was clearly inebriated and sitting on the lawn of a house he does not own said a few words to him that I could not hear then said, in a voice loud enough that I would surely hear it, "Okay, no problem, have a good nigh." And drove away leaving him there.

80. I then walked right up to the man with my dog on the leash and asked the man (in Spanish) if he knew my neighbors and when he replied, "No" I asked then why was he drinking on their property.

81. The man wasn't nasty or rude but was without question DRUNK. He said, If you don't want me here its ok I'll leave."

82. I wasn't nasty or rude either but I did say that I would prefer he left, mostly because my dogs won't stop barking as long as he stays.

83. The situation played out without pleasantly but it could easily have not.

84. I should never have been put in that position. If I were any other woman in that position that would have been handled very differently.

85. If the situation was reversed and "the kind" of person the Defendants have determined I am was loitering on the private property of any other citizen in this community making any other resident feel uncomfortable in heir own home, the police would have removed the threat.

86. I feel completely unprotected living in this community now. I have lived here for 16 years without a problem. I don't bother anyone, I mind my business and I don't shit where I eat.

87. The SCPD and I became acquainted because I was **THE VICTIM** of a crime. Somehow that's been forgotten.

88. I am entitled to EQUAL protection under the law.

89. I am entitled to file a complaint and/or request that decisions are reviewed and inappropriate behavior be disciplined whether the offender is a civilian or law enforcement officer.

90. I can object to and/or expose being treated disrespectfully or in a manner that violates my safety and constitutionally protected rights with adverse consequences or the threat thereof.

91. The Defendants have made me a prisoner in my home because I am no longer safe in the community.

## DISABILITY DISCRIMINATION

92. I am a 57 year old African American woman who meets the ADA's definition of "disabled".

93. I also have a condition called *Mydriasis* which causes my pupils to be fixed and dilated. In a clinical setting fixed and dilated pupils are typically an indication of severe irreversible brain damage.

94. The layperson, however, typically perceives dilated pupils that don't respond to light (fixed) to indicate mental impairment and/or chronic illegal substance abuse. And, rare though it is, that neither of those categories fit, in my case neither does.

95. DEFENDANT #1 knows that. But he also knows that, at face value, everything else about me speaking to the contrary notwithstanding, the appearance of my eyes provides convincing enough proof to substantiate even the most absurd allegation.

96. Officer Amaya and everyone else I encountered within the Suffolk County Police Dept. were either misled or independently mistook a physical anomaly commonly associated with diminished mental capacity (mental illness) for corroboration of Anthony's false narrative.

97. Moreover, I have been diagnosed with and have a record of treatment for an emotional disorder.

98. Based on that, numerous officers of the Suffolk County Police Dept. DEFENDANTS #2, #3, 4, 5, 6, and 7 did to me what would not have been done to any other woman under the same circumstances. They completely disregarded my allegations based on the word of the suspect and/or their preconceived notions of what having an "emotional disability" makes me. I am a member of a protected group and the characteristics of my impairment are Constitutionally protected.

99. The Suffolk County Police Department must be in compliance with Title II of the ADA in both their interactions with the disabled community and the enforcement of laws on our behalf.

100. As a result of Officer Amaya and the Suffolk County Police Department's disability discrimination I was denied appropriate intervention, protection and services that would have been routinely provided absent my disability and/or perceived impairment.

101. I was left with no choice but to return to an environment where my physical and mental wellbeing was under attack.

102. My standing in the community was diminished by SCPD's indifference empowering Anthony to abuse me both mentally and physically with impunity. "The accuser is mentally ill" even if diagnosed with a condition that meets that definition, is not an answer to the charges.

103. The Constitution protects the right to due process of both the accused and the victim. The Sixth Amendment guarantees the right to face one's accuser.

104. The fact that the accuser has a "mental illness" can be used to prevent conviction but using it to prevent being charged is actually a violation of the very same amendment.

105. I understand that the law has yet to recognize the distinction, but being diagnosed with a condition currently defined as "mental illness" is not the same as MENTAL UNWELLNESS. The assumption that the two are mutually inclusive, especially when that information is offered to the police by a suspect in lieu of a denial and/or defense, stripped me of my EQUAL RIGHT to due process.

106. My being "mentally ill" as well as any theory of alternative causation offered by Anthony is OPPOSING EVIDENCE which ALL VICTIMS have the right to be made aware of and challenge.

107. DEFENDANT #2 and other members of the Suffolk County Police Department were made aware that there was evidence of a bacterial infection in my mouth virulent enough to limit the possible causation(s) to very few.

108. The one I offered, being poisoned by Defendant #1 with Rid-X was certainly not eliminated.

109. The only way to legitimately eliminate that possibility was through an investigation that was never conducted.

110. Instead, Defendant #2, acquiesced by every other member of SCPD (Defendants #3-7) eliminated the possibility my allegations were true based solely on my PERCEIVED "mental impairment" and Law Enforcement's policy and custom to assign very little if any credibility to that which is offered by those who are or perceived to be "mentally ill.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Under New York law, a cause of action alleging intentional infliction of emotion distress "has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress"

111. The Suffolk County Police Department and Officer Amaya demonstrated a wonton disregard for my physical safety and mental wellbeing.

112. The symptoms I was exhibiting were so severe that there were only 2 possible causes, both of which are felonies and yet, in a display of indifference, the level of which should shock the conscience, they conveyed to me and all else involved that my life has absolutely no value.

113. I was forced to accept that the rules don't apply to women *like me*. That through absolutely no fault of my own, despite all my attributes and accomplishments, I am less than everyone else. 5 minutes in a room with a psychological profiler will dispel every notion the SCPD et al. have with regard to me and the nature of my relationship with Anthony.

114. Objectivity and the time it takes to ask a handful of questions, observe mannerisms, discern credibility and all of the other things police officers are trained to do before drawing conclusions; GIVING ME A CHANCE TO DEFEND MYSELF, would have revealed to Officer Amaya

that he was being mislead and the information he conveyed to the hospital personnel and his SCPD colleagues was patently false.

115. A brief conversation would have made Officer Amaya aware of my intellect and therefore, my ability to interpret the implications of his actions (inaction). Officer Amaya purposely and recklessly conveyed false information that he knew would convert me from victim to villain. I was treated with no compassion whatsoever and when I dared to challenge the Suffolk County Police Department's indifference, they took an offensive posture against me and, therefore, in support of the person from whom I needed protection.

116. Had I not persisted seeking redress after the initial incident on October 29-30, 2022 writing letters, filing complaints, going to the Police station demanding the decisions be reversed and action be taken it may have been reasonable to conclude that, as is occasionally the case, I vindictively making false accusations, attention seeking etc.

117. But I have consistently been doing and saying things the person I am believed to be wouldn't (**COULDN'T**).

118. I have unabashedly shown up not demanding to be believed as much as BEGGING TO HAVE MY CLAIMS INVESTIGATED.

119. This is now over 2 years after the fact and the conditions under which I exist are all in my favor. I own my home outright. Defendant #1 and I are living apart and the divorce will soon be finalized with terms that favor me.

120. I have persevered salvaging what I could of my old life and preparing to build a new one.

121. But my life remains in as much if not more jeopardy today as it was before I called 911 on October 29, 2022 because the statements and actions of DEFENDANTS 2-20, the falsehoods they accepted as truth, the conclusions that were drawn and the decisions to act as they did or not at all are now EVIDENCE AGAINST ME.

122. The Defendants failed to conduct an investigation initially because they didn't believe me.

123. Since, however, it is their own interest even more so than Anthony's that are protected by not investigating, filing charges and prosecuting this case.

124. It is not ignorance or neglect that is causing the emotional terrorism I am experiencing. It is the intentional actions and wonton disregard for my safety, MY LIFE.

125. Also, In the letter written by Ellen Mullally dated December 15, 2022 she referenced my sisters death saying,

"Please accept our sincere condolences for the loss of your sister many years ago that has had such an adverse effect upon your emotional wellbing.

126. I have never met that woman. She was not present in the ER. She got that information from a letter written to Ms. Donna Lieberman of the ACLU that was attached to my correspondence to Richard T. Margulis and Debra Grimm each dated November 15, 2022.

127. Ms Mullally used that information and the access her position at the hospital provided her to intentionally cause me emotional distress.

128. Her actions were reported to Mr. Margulis in a second letter dated December 20, 2022 to which I attached a copy of her correspondence.

129. I have experienced unspeakable trauma caused intentionally by the Defendants for which they all are jointly and severally liable.

## NEGLIGENT INFLICTION OF EMOTIONAL ABUSE

It is well settled that in a cause of action for intentional infliction of emotional distress, a plaintiff must plead and prove four elements: (1) extreme and outrageous conduct; (2) the intentional or reckless nature of such conduct; (3) a causal relationship between the conduct and the resulting injury; and (4) severe emotional distress.

130. The severity of the symptoms I was exhibiting on October 29, 2022 and the residual scarring leave absolutely no doubt that a crime had been committed against me.

131. Regardless of which side of the story they believed, Suffolk County Police Department had a legal obligation to protect my interests and enforce the law on my behalf.

132. They also had a duty to prevent the threat to my safety from recurring or escalating.

133. Instead, their negligence facilitated, if not encouraged further emotional trauma and put me at risk for continued physical harm and/or death.

134. The information conveyed at the hospital was not limited to those responsible for my care.

135. Officer Amaya's reliance on the information he obtained from the suspect (Defendant #1) created a chain of events that caused that false information to be disclosed to security personnel and with whomever they shared it as well as civilian personnel and so on, exposing me to continuous, pervasive danger.

136. The diagnosis absent causation, together with the lack of legal repercussion implies either abhorrent promiscuity on my part and/or inordinate susceptibility and that my allegations against Defendant #1 were malicious.

137. The very notion(s) of either (all) serving to decimate my credibility making me a target for future victimization.

138. Suffolk County Police Department's failure to fulfill their obligation to protect and serve has put me in a situation where I am not safe outside my home.

139. What started out a lie; word of mouth that could easily be disproven is now backed by medical records and police reports.

140. Suffolk County Police Department's negligence borders on obscene in that it first laid the groundwork for Defendant #1 to justify harming me further (or worse) and now anyone wishing to do so in his stead and get away with it. Defendant #1 no longer has access to me and yet, because of Suffolk County Police Department's unconscionable negligence, I am still in constant fear for my life.

141. Furthermore the medical providers of LICH (Defendants #8, #9, and #10)'s failure to treat the symptoms I reported or explore the damage done and determine what if any measures should have been taken to undo or mitigate further damage was egregiously negligent.

142. As stated previously, Ellen Mullally specifically states that their conclusions were based on the absence of evidence to "support alleged chemical ingestion". Not only did they never help me. They have no idea why I was there.

143. The damage done to the tissues in my mouth and digestive system remains unknown. There could be conditions that are worsening because no one has ever examined me objectively.

144. This is a complete travesty.

## BREACH OF DUTY

145. The way the Suffolk County Police Department handled my initial report and their subsequent response (or lack thereof) to my complaints was not just offensively negligent, it was a gross dereliction of Duty.

146. Their failure to adhere to the policies and procedures reflect not only the low esteem in which they hold the disabled community but also shows a lack of respect for the law.

147. The legislative strides made by historically oppressed populations are undone if those laws are not enforced.

148. Furthermore, as the first link in the Judicial chain the strength of which relies heavily on the professionalism of the police.

149. DEFENDANT #2 failed to examine the evidence I brought with me to the hospital. In fact, the Domestic Incident Report specifically asks if there is "evidence present" to which Officer Amaya indicated, "No".

150. Likewise he falsified answers to the questions, "Injured?" and "In Pain?" answering "No", for both despite my clearly advising of the pain I was in.

151. As stated above, I advised higher ranking officers within SCPD's 5th precinct as well as the (then) Police Commissioner Rodney K. Harrison of Officer Amaya's malfeasance in writing.

152. There was no question as to whether a crime was committed.

153. Nor was there a question of whether I was a member of a protected group. Their every word and deed since the beginning is an acknowledgement of having identified me as such.

154. As such, every member of the Suffolk County Police Department is mandated to promptly report suspected abuse of a "vulnerable person".

155. The Suffolk County Police Department's dereliction of duty is most emotionally injurious because there should have been no way to get this wrong.

156. That is, no way for me to *slip through the cracks* and remain in harm's way.

157. I needed help. Intervention was necessary.

158. As disturbing as it is to realize that Anthony's word alone had the power to transform me from the confident, self-sufficient woman I am into some damaged, self-loathing invalid, being mistaken as such might have actually done me more good than harm if the proper protocol, under *those* circumstances had been followed.

159. There is no question as to the symptoms I exhibited on October 29, 2022. I was diagnosed with "Acute Pharyngitis" and the extensive scarring indicated chronic contamination of the tissues in my mouth.

160. The discrepancy as to causation was of no immediate consequence with regard to whether an investigation was warranted.

161. My explanation was that Anthony had been poisoning me with RidX for an extended period.

162. The alternative explanation was that I was persistently engaging in deviant sexual activity for which a mentally incapacitated or "vulnerable individual" is not able to consent.

163. There is absolutely no justification for Officer Amaya and Suffolk County Police Department's failure to live up to the most basic standard of care.

164. The department as a whole and each of the officers who encountered me directly i.e., Seargeant McHugh and Seargeant Racioppo, and later, (then) Police Commissioner Rodney K. Harrison made aware of my allegations against Anthony and/or his rebuttal, are jointly and severally liable for violating my "clearly established" rights.

165. Officer Amaya's determination that no crime had been committed; that my allegations were not credible because I have a "mental illness" and/or because the only other alternative explanation was more likely, converted his next move from discretionary to ministerial.

166. There is exact protocol to follow upon information that a "Vulnerable Person" has been the victim of a crime.

167. Likewise, responses on the DIR report that should have come from me, but were falsified by Officer Amaya; such as answering, "yes" to any of the following questions:

Has the Suspect ever:

Threatened to kill you or your children? □ Yes □ No
Strangled or "choked" you? □ Yes □ No
Beaten you while you were pregnant? □ Yes □ No
Is suspect capable of killing you or children? □ Yes □ No
Is suspect violently and constantly jealous of you? □ Yes □ No
Has physical I violence increased in frequency or severity over the past 6 months? □ Yes □ No

would have prompted a mandatory referral "to the NYS Domestic and Sexual Violence Hotline at 1-800-942-6906 or Local Domestic Violence Service Provider ( )________________."

168. Again, SCPD and the Police Commissioner were advised of the falsified documents and did not respond to my correspondence or take the appropriate action mandated under the **actual** circumstances.

169. Furthermore, had Officer Amaya and/or higher-ranking officials made aware of Anthony's attempt(s) to murder me performed a diligent investigation they would have discovered that though I have been diagnosed with a psychological disorder, Anthony is in fact the one of us that has a mental illness.

170. An investigation would have produced evidence that he was both homicidal and suicidal. As evidenced by his hospitalization following the final break-up of our marriage when Anthony went to live with our son.

171. Between July 5, 2023 and July 22 Anthony spent 16 days in the ICU on life support with multiple organ failures (Pancreas, Liver, Kidney, Lungs) resulting from the chronic and excessive use of alcohol.

172. Likewise, in a formal interview with me they would have discovered that though the condition with which I was born manifests a chemical imbalance in my brain that impacts my temperament (emotions) and executive functioning, it has absolutely no effect on my ***mental wellness*** most notably my ability to think critically and self-regulate.

173. As evidenced by Anthony's medical records and other documentation, I served as both his Power of Attorney and Health Proxy while he was in the ICU and remained such when he was moved to a regular unit for the remainder of his hospital stay ending August 3, 2023

174. I alone interacted and conferred with the hospital staff on his behalf and authorized the numerous treatments and surgeries he needed including but not limited to mechanical ventilation and daily dialysis.

175. As indicated in the written correspondences delivered to SCPD and the Suffolk County Commissioners office, the distorted understanding of the dynamics of my marriage to Anthony came from the indoctrinated beliefs of what having a "mental illness" makes me and as is often the case, the offender was able to exploit that.

**Warren ex rel. Warren v. District of Columbia (1991), the D.C. Circuit Court held that the police could be liable for harm to an individual if they created a danger that did not previously exist.**

176. Officer Amaya's dereliction of duty and those supervising him created a danger that did not previously exist.

177. Their attitudes and behavior as well as those of the medical staff and other personnel and Executive Officers of Long Island Community hospital and the entity that governs (owns) the hospital (DEFENDANT #20) is evidence of a pervasive custom and unspoken policy within the Suffolk County Police Department and other Governing entities to deny care, protection and justice to those labeled "mentally ill" for whom they have determined the rules do not apply.

178. The exact danger that prevented me from reporting being poisoned sooner; fear that my allegations would be ignored, or worse, used against me continues unabated today.

179. The information contained in medical records and police reports and in the minds of those involved as a result of the facts being twisted or omitted are a threat to my safety that has impacted me severely emotionally, financially and physically.

180. ***But for*** Officer Amaya's falsifying the Domestic Incident Report(s) and failing to investigate my allegations against Anthony or triggering an investigation by reporting my symptoms/circumstances to the Vulnerable Persons' Central Register and/or Adult Protective Services as mandated, my constitutional Rights would not have been violated and the danger I was in when left with no choice but to return home would have been mitigated.

181. Completely dismissing my report with absolutely no investigation and no follow-up sent the message that my life was of no importance to SCPD so that ending it would not be questioned.

182. Until Officer Amaya's (SCPD's) involvement, Anthony's efforts to end my life had been by subtle means; poisoning.

183. I was married to Anthony for 40 years and, but for a handful of incidents when he was under the influence of narcotics, he had not been as confrontational and cruel as he became after having it made clear by the Suffolk County Police Department that the law, apparently, doesn't apply to me.

184. The investigation conducted as a result of my being registered as a" Vulnerable Person" alleging abuse or by APS was a failsafe (if you will) so that even if the Suffolk County Police Department didn't have the time, resources or inclination to investigate or act on my allegations, they would not go completely ignored.

185. Officer Amaya's malfeasance and the SCPD's refusal to take my subsequent written reports and complaints seriously, were a barrier to the relief provided by **Criminal Procedure Law §§140.10(5), 530.11(6); Executive Law §§214-b(a), 837(15) Criminal Procedure Law §§530.11, 530.12, 530.13;, etc**. and services afforded victims of domestic violence under **Social Services Law §459-c**

186. Furthermore, the substance most recently being used when the police got involved, is a biological agent. Those servicing me in a medical capacity failing to identify it as the source of my chronic infection(s) and Officer Amaya's failure to process the crime scene and Suffolk County Police Department thereafter and still refusing to do so left me susceptible to whatever surfaces, devices and or products were tampered with and/or inadvertently.

187. That breach of duty not only left me in harm's way but it squandered an opportunity to preserve evidence.

## RELIEF SOUGHT

1. the award of $8B (Eight Billion dollars) in compensatory damages for the obscenely severe emotional trauma (distress) caused by the actions specified herein.

   The level of liability the defendants exposed themselves to is a direct reflection of their confidence in my defenselessness. Who and how many are listed as defendants in this matter is very significant. I was the victim. Nobody anywhere can know how bad it hurts to have been treated as inhumanely as I have been. But the level danger I am in at this very moment reliving these events in order to effectively convey the emotional devastation with no support after having painstakingly buried it is truly profound.
   The level of competence and coping skills demonstrated herein speak to the potential that remains. My capacity to earn money, contribute to society and create change for those most in need has been, even if not permanently disabled, certainly has been deferred. Compensatory damages in this instance must reflect that.

2. punitive damages in an amount commensurate with the predatory nature of the offenses and the level of trust that was breached. It is difficult to put into words how wrong this was. The greatest tragedy of this ordeal is that none of the material facts are disputable, no legitimate evidence exists to support the current narrative and there will be no testimony that can withstand cross-examination. I am not mentally ill. I have not engaged in ANY behavior (sexual or otherwise) that deviates from the standard expected of any of my like-situated, self-respecting female peers. Everything about me speaks to the contrary of what has been suggested, accused and/or insinuated.

3. Special Punitive damages levied against the municipalities' based upon the mitigation doctrine to be applied in reverse multiplying the damages by a percentage determined with the same formula that would be applied if it were I that failed to mitigate the damages

   This is a precedent setting issue because there are multiple doctrines that apply in this instance. If these four are considered in exactly the following order

   Suffolk County and NYU Langone Health System and Hospitals are liable for the compensatory damages because as "persons" under §1983, such entities can be sued directly under §1983 for policies or customs that violated the U.S. Constitution.

   the Court, in analyzing the legislative history, found that Congress did not intend for a municipality to by held liable under §1983 solely because it employed a tortfeasor, and that therefore a local government could not be held liable under respondeat superior.[8]

   The duty to mitigate refers to a party's legal responsibility to make a reasonable effort to limit the harm or losses stemming from another party's wrongdoing or negligence. This duty can apply in a variety of legal contexts, including contract law, tort law, and employment law.

Considerations of public policy do not support exposing a municipality to punitive damages for the malicious or reckless conduct of its officials because neither the retributive nor the deterrence objectives of punitive damages and of § 1983 would be significantly advanced by holding municipalities liable for such damages. Pp. 453 U. S. 266-271.

So that:

The U.S. Supreme Court held a municipality may not have punitive damages imposed against it in a 42 U.S.C. § 1983 action. However, the principle behind the mitigation doctrine is to prevent "persons" from doing nothing to prevent further damages, then simply passing on all the costs to the party that initially caused the harm.

Suffolk County and NYU Langone Health System and Hospitals are directly liable "persons" with a policy or custom that makes their Highest-ranking/Executive Officers Ultimate decision making authority. My visit to the police department on November 11, 2022 and the subsequent letters written to SRO of SCPD's 5th precinct and Police Commissioner Rodney K. Harrison and letters written directly to Richard T. Margulis CEO and Debra Grimm, DNP, MS, RN were failed opportunities to mitigate the damages I suffered. They are not staff or representatives, nor is it their responsibility to manage personnel. They *are* the embodiment of the entity. Their decisions shape the culture or of the entire organization or industry even.

To have reached out directly to individuals with that level of power, for them to have specific knowledge of the circumstances and do nothing or in the case of Ellen Mullally, antagonize the situation, must nullify the municipalities/entity's immunity. In this instance, the restorative justice falls short of the level of accountability due when liability is not merely by extension. Retributive justice is imperative in situations where the failure to mitigate the damage happens that high up the chain of command and was wantonly negligent or intentional.

Furthermore the mitigation doctrine is considered after or separate from the determination of fault. So that to immunize the municipality from punitive damages in this case amounts to a failure to recognize and/or adjudicate the breach of the entirely separate duty of care owed by Defendant #s 6, 7, 8, 15, 16, 17, and 20;

4. an arrested warrant issued for Defendant #1 (Anthony Hernandez) for attempting to murder me and whatever other statutes apply with an enhanced penalty to reflect the way my disability was exploited in the commission of the crimes and in an effort to get away with them.

5. arrest warrants for the two unidentified black male hospital employees (Defendants #13 and #14) who physically assaulted me and took my phone as I exited the hospital on October 30, 2022

6. for all prosecution of any/all defendants charged with criminal offenses relating to this matter to include penalty enhancement reflecting that the attack (abuse) was motivated by hate.

7. The dismissal of Officer Amaya (Defendant #2) from the Suffolk County Police Department and whatever disciplinary measures are appropriate for the Higher-ranking Officers involved.

8. a federal investigation of the events following the incidents addressed herein (The Gang-stalking) so that the full extent of the conspiracy to violate my civil rights in the hope that it would drive me to take my own life can be exposed and all those responsible for my suffering are held accountable.

9. any information and/or documentation to aid in identifying and prosecuting any person or entity that contributed to the emotional terrorism that continues unabated.

10. a mandate for Suffolk County Police Department and Long Island Community Hospital to implement policies that focus on servicing the needs of the neurodiverse community including but not limited to specific training in distinguishing the difference between a **psychiatric diagnosis** and **mental unwellness**;

11. for one of the specific requirements of said training and policy reform to be the consultation of individuals with first-person experience of "psychiatric disorder(s)"in order to accurately determine the community's needs and, more importantly, to give law enforcement officers opportunities to engage the community in a social context other than crisis so that they can experience the various POSITIVE and truly extraordinary nuances of neurodiversity.

12. an investigation to identify any other crimes reported by a 'vulnerable person" that the Suffolk County Police Department and/or other branches of local government failed to address.

13. an injunction for presumptive In Forma Pauperis status or Waiver of court fees in instances where **all** of the following conditions are met:
    a. One of the causes of action is Intentional Infliction of Emotional Distress and
    b. The Plaintiff has a pre-existing, formally diagnosed emotional disorder and in compliance with treatment.
    c. At least 1 of the defendants in the action was aware of said psychiatric condition and
    d. the Court finds that the circumstances of the claim justify prayer for punitive damages

    **I don't know if I made that make sense, but it is unconscionable that this much wrong could be done to someone by this many people for this long out in the open and the perpetrators be as comfortable as the Defendants in this matter have been that they won't be exposed.**
    **It is highly unlikely that anyone with an inherent disadvantage would ever overcome this level of adversity in the future without at least removing the financial barrier to seeking justice.**

14. such other and further relief as the court may deem to be just and proper.

The level of wrong the SCPD and LICH got this is astounding and the resolution of this matter must not only reflect the emotional terrorism I have endured and irreparable harm as a result of the Defendants'

acts, inaction, omissions, breach of duty, lack of professionalism and callous disregard for decency but also send a message to my likeminded peers and those who would offend them that the Court will no longer turn a blind eye to our suffering and/or deaf ear to our reports. Our lives must **FINALLY** matter also!

Dated: Suffolk County, New York

December 15, 2024

Veronica Hernandez

Sworn to before me on this

16 day of December, 2024

Notary

Adrian A. Aragundi
Notary Public, State of New York
No. 01AR6435316, Suffolk County
Commission Expires June 21, 2026

Respectfully Submitted,
Veronica Hernandez
35 Lillian Place
Patchogue, New York 11772
718-644-9888