**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Veronica Hernandez,<br><br>       Plaintiff,<br><br>  -v-<br><br>Anthony Hernandez, P.O. E. Amaya, Sgt. Racioppo, Sgt. McHugh, Fame Caucasian Officer Doe, Rodney K. Harrison, Suffolk County Police Department, Long Island Community Hospital, Dr. Doni Marie Rivas D.O., Female Asian Nurse Doe, Female Caucasian LICH Employee Doe, Female Caucasian LICJH Security Doe, Male African American Security Doe, Male African American LICH Orderly, Ellen Mullally, Richard T. Margulis, Debra Grimm, LICH Clinical Leadership, LICH Section 1557 Coordinator, NYU Langone Health System & Hospitals,<br><br>       Defendants. | 2:24-cv-8614<br>(NJC) (ST) |

**<u>MEMORANDUM AND ORDER</u>**

NUSRAT J. CHOUDHURY, United States District Judge:

On December 17, 2024, Plaintiff Veronica Hernandez, commenced this action against her husband, Anthony Hernandez, members of the Suffolk County Police Department (the "Suffolk County Defendants"), and employees of Long Island Community Hospital (the "NYU Defendants," and together "Defendants"). (Compl., ECF No. 1.) The Complaint brings the following claims against Defendants: (1) a claim under 42 U.S.C. § 1983 for violating Ms. Hernandez's rights by failing to criminally investigate and charge Mr. Hernandez with a crime; (2) claims for disability discrimination and retaliation under the Americans with Disability Act ("ADA"), 42 U.S.C. § 12101, et seq. and the Rehabilitation Act, 29 U.S.C. § 701 et seq.; and (3) state law claims for defamation, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED"). (Compl. at 11–27.)

The Suffolk County Defendants moved to dismiss this action on July 7, 2025 (ECF No. 15), and the NYU Defendants moved to dismiss the action on September 9, 2025 (ECF No. 23). This Court referred both motions to Magistrate Judge Steven Tiscione on August 15, 2025 and November 13, 2025 respectively. (Elec. Orders, Aug. 15, 2025, Nov. 13, 2025.)

On January 13, 2026, Judge Tiscione issued a Report and Recommendation (the "R&R") recommending that both the Suffolk County Defendants' Motion to Dismiss (ECF No. 15) and the NYU Defendants' Motion to Dismiss (ECF No. 23) be granted. (R&R at 20.) The R&R additionally recommends that the Court deny Ms. Hernandez leave to replead or file an amended complaint, on the ground that any such opportunity to amend would be futile. (*Id.* at 20.)

A copy of the R&R was provided to counsel for the Suffolk County Defendants and to counsel for the NYU Defendants via ECF on January 13, 2026. (*See id.*.) Counsel for the Suffolk County Defendants filed a certificate of service on January 14, 2026, and counsel for the NYU Defendants filed an affidavit of service on January 15, 2026. (ECF Nos. 30, 31.) Both affirm that counsel served the R&R on Ms. Hernandez by Certified Mail at Ms. Hernandez's last known address on the dates the certificates of service were filed. (*See id.*). The R&R instructed that any objections to the R&R were required to be submitted in writing to the Clerk of Court within fourteen (14) days of service of the R&R. (R&R at 20.) Accordingly, Ms. Hernandez was required to file any objections to the R&R by February 2, 2026. *See* Fed. R. Civ. P. 72(b)(2) (requiring a party to file objections to a magistrate judge's report and recommendation within 14 days of service); Fed. R. Civ. P. 5(b)(2)(C) (providing that service by mail "is complete upon mailing"); Fed. R. Civ. P. 6(d) (adding three days for a party to act in response to a document served by mail); Fed. R. Civ. P. 6(a)(1)(C) (deferring deadlines that fall on a Saturday or Sunday until "the next day that is not a Saturday, Sunday, or legal holiday"); *see also Murphy v. Murphy*,

No. 20-cv-02388, 2023 WL 2795977, at *1 (E.D.N.Y. Apr. 5, 2023) (setting out these same rules for calculating the deadline to object to an R&R).

In reviewing a report and recommendation, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). If no objections are filed, a district court reviews a report and recommendation for clear error. *King v. Paradise Auto Sales I, Inc.*, No. 15-cv-1188, 2016 WL 4595991, at *1 (E.D.N.Y. Sept. 2, 2016) (citation omitted); *Covey v. Simonton,* 481 F. Supp. 2d 224, 226 (E.D.N.Y. 2007).

Because no party has timely filed objections to the R&R, I may review the R&R for clear error. *King*, 2016 WL 4595991, at *1. Nevertheless, I reviewed the R&R de novo out of an abundance of caution. Having reviewed the motion papers, the applicable law, and the R&R, I adopt the R&R's thorough and well-reasoned recommendation that the motions to dismiss filed by the Suffolk County Defendants and the NYU Defendants be granted, and its recommendation that Ms. Hernandez be denied leave to amend her claims against the Suffolk County Defendants and the NYU Defendants.

Accordingly, the Suffolk County Defendants' Motion to Dismiss (ECF No. 15) and the NYU Defendants' Motion to Dismiss (ECF No. 23) are both granted. The Suffolk County Defendants and the NYU Defendants are therefore terminated from this action.

The Clerk of the Court is respectfully directed to mail a copy of this Order to Plaintiff at her address of record and to record such mailing on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Dated: Central Islip, New York
      February 5, 2026

                                              */s/ Nusrat J. Choudhury*
                                              NUSRAT J. CHOUDHURY
                                              United States District Judge

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VERONICA HERNANDEZ,<br><br>                              Plaintiff,<br><br>                    -against-<br><br>ANTHONY HERNANDEZ, P.O, E. AMAYA #6916, SGT. RACIOPPO, SGT. MCHUGH, FEMALE CAUCASIAN OFFICER DOE, RODNET K. HARRISON, SUFFOLK COUNTY POLICE DEPARTMENT, LONG ISLAND COMMUNITY HOSPITAL DR. DONI MARIE RIVAS, FEMALE ASIAN NURSE DOE, FEMALE CAUCASIAN LICH EMPLOYEE DOE, MALE AFRICAN AMERICAN SECURITY DOE, MALE AFRICAN AMERICAN LICH ORDERLY, ELLEN MULLALLY, RICHARD T. MARGULIS, DEBRA GRIMM, LICH CLINCIAL LEADERSHIP LICH SECTION 1557 COORDINATOR, NYU LANGONE HEALTH SYSTEM & HOSPITALS,<br><br>                              Defendants. | **REPORT AND RECOMMENDATION**<br>**2:24-CV-8614** |

**TISCIONE, United States Magistrate Judge:**

On December 17, 2024, Veronica Hernandez ("Plaintiff") sued members of the Suffolk County Police Department ("Suffolk County Defendants"), Long Island Community Hospital ("NYU Defendants"), and Anthony Hernandez alleging defamation, negligent and intentional infliction of emotional distress, violation of the Americans with Disabilities Act ("ADA"), and violation of 42 U.S.C. § 1983. The Suffolk County and NYU Defendants move to dismiss. The motions should be GRANTED.

-1-

## BACKGROUND[1]

### I.    Parties

Veronica Hernandez ("Plaintiff") is a self-represented New York resident.

Defendants can be broken into three categories.

First is Anthony Hernandez, a self-represented New York resident who is married to Plaintiff. Anthony Hernandez has been inactive in the case thus far.

Second are the Suffolk County Defendants. The Suffolk County Defendants are the Suffolk County Police Department ("SCPD"), SCPD Commissioner Rodney Harrison, Officer Amaya, Sergeant McHugh, and Sergeant Racioppo.

The third category are the NYU Defendants. The NYU Defendants are the Long Island Community Hospital ("LICH"), Dr. Doni Marie Rivas, Female Asian nurse Doe, Female Caucasian LICH Employee Doe, Female Caucasian LICH Security Doe, Male African American Security Doe, Male African American LICH Orderly, Ellen Mullally, Richard T. Margulis, Debra Grimm, LICH Clinical Leadership LICH Section 1557 Coordinator, and NYU Langone Health System & Hospitals.

### II.    Statement of Facts and Procedural History

On October 29, 2022, Plaintiff called SCPD alleging her husband, Anthony Hernandez, had been poisoning her with Rid-X, a product used to clean septic tanks. Compl. ¶¶ 1-4, ECF No. 1.[2] The basis of the allegation is that she was suffering from throat irritation and other symptoms for over a year. *Id.* ¶ 10. Plaintiff claims she was experiencing "nose bleeds, earaches, thrush, [her]

---

[1] The Court takes the factual allegations from the Complaint and assumes that they are true for purposes of this Motion. *See Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 458 (2d Cir. 2019).

[2] The complaint does not include page numbers, so any page numbers referenced are ECF provided numbers in the top ribbon. Paragraph numbers begin on page 11 and restart at page 28 under the heading "RELIEF SOUGHT". Any paragraph numbers referenced are to the body of the complaint, paragraphs 1-187, prior to the "RELEIF SOUGHT" heading.

finger nails were dark and brittle, [her] breath was rancid, [and she had] scarring on [her] palate and throat." *Id*. ¶ 19.

Officer Amaya responded to the call and Plaintiff was transported to LICH for evaluation. *Id*. ¶ 1. When Plaintiff was on route to the hospital, Anthony Hernandez allegedly informed Officer Amaya that Plaintiff was mentally ill, an allegation Plaintiff denies. *Id*. ¶¶ 11-12. Later in the complaint, however, Plaintiff states she was diagnosed with an "emotional disorder." *Id*. ¶ 97.

Allegedly, Anthony Hernandez told Officer Amaya that Plaintiff's symptoms were a result of her engaging "in rampant, unspeakably promiscuous behavior with random men, thereby making [her] mouth and throat accessible and susceptible to severe and chronic bacterial infection." *Id*. ¶ 14. Plaintiff claims that "though Officer Amaya was not an active participant in the events that unfolded while I was in the care of Long Island Community Hospital," he conveyed "false, defamatory information obtained from Anthony . . . to the ER staff [which] was the basis for their mistaken beliefs, deprivation of services and all other constitutional violations." *Id*. at pg. 7.

Plaintiff alleges Officer Amaya relayed the information without "fact checking." *Id*. ¶ 4. The allegedly false information provided by Anthony Hernandez is the lynchpin and entire basis of Plaintiff's complaint. Plaintiff claims SCPD and LICH were dismissive of her claims, treating her as if she suffered from mental illness as opposed to using "domestic violence protocol." *Id*. ¶ 9.

Even still, LICH assessed plaintiff, ran lab tests, and found no support for chemical ingestion or domestic abuse. *Id*. ¶¶ 11-13. Plaintiff alleges LICH failed to rule out "alternate causation" for her throat irritation. *Id*. ¶ 18. Plaintiff claims that upon discharge, three unknown

LICH employees menaced her and attacked her. *Id*. ¶¶ 27-30. There are no details provided of the alleged altercation.

Subsequently, Officer Amaya informed Plaintiff there was insufficient proof to pursue formal criminal charges against Anthony Hernandez. *Id*. ¶ 26. Nevertheless, on November 11, 2022, Plaintiff visited the Fifth Precinct of the SCPD to file a criminal complaint. *Id* ¶¶ 32-33. Sergeant McHugh informed Plaintiff SCPD would not pursue criminal charges because no crime had been committed. *Id.* ¶ 49. Plaintiff requested to speak with a higher-ranking officer. *Id*. Sergeant Racioppo then spoke with Plaintiff, received her written complaint, and walked away. *Id*. ¶ 44. Plaintiff alleges another unidentified female police officer, who Plaintiff believes handles domestic violence cases, then walked by her and ignored her. *Id*. ¶ 48. Plaintiff left a second copy of her complaint with Sergeant McHugh before leaving the station. *Id*. ¶ 51. Finally, Plaintiff mailed a copy of her criminal complaint to SCPD and SCPD Commissioner Rodney Harrison. *Id*. ¶ 51-53.

Later that day, Plaintiff called SCPD to report that Anthony Hernandez was inebriated and confronted her. *Id.* ¶ 55. Officer Amaya was dispatched to the scene. *Id*. ¶ 57. Plaintiff alleges SCPD intentionally delayed response time. *Id*. ¶¶ 55-58. Further, Plaintiff claims Officer Amaya was dispatched to purposefully intimidate her – the basis of the allegation is entirely unclear. *Id*. ¶ 62. Plaintiff believes this is evidence sufficient to confirm SCPD "had taken [a] position against" her. *Id*. ¶ 67.

Nearly two years later, in August 2024, Plaintiff called SCPD to report an unknown drunken male sitting in her neighbor's front yard. *Id*. ¶ 73. Plaintiff alleges the responding officers did not acknowledge her, and instead spoke with the unknown male, determined he was not a threat, and left the scene. *Id*. ¶¶ 78-79. The unknown male then left upon Plaintiff's request without

conformation. *Id*. ¶¶ 81-85. Plaintiff was upset with the manner SCPD handled the situation, claiming she was discriminated against. *Id*. ¶¶ 84-91.

The sum of Plaintiff's allegations is that SCPD and LICH were dismissive of her domestic violence allegations. Plaintiff filed a complaint on December 17, 2024, alleging defamation, negligent and intentional infliction of emotional distress, discrimination under the ADA, and civil rights violations under 42 U.S.C. § 1983. Plaintiff also demands criminal charges against various Defendants. Plaintiff seeks $8 billion in damages, as well as punitive damages, and myriad injunctive relief.

On July 7, 2025, the Suffolk County Defendants moved to dismiss. *See* ECF No. 15. On September 9, 2025, the NYU Defendants moved to dismiss. *See* ECF No. 23. Judge Nusrat Choudhury refereed both motions to this Court for a report and recommendation.

## LEGAL STANDARD

To survive a 12(b)(6) motion, a complaint must contain sufficient facts such that "a claim to relief that is plausible on its face." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the factual allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  In doing so, the court must accept the complaint's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See Gamm*, 944 F.3d at 458.  However, allegations that "are no more than conclusions are not entitled to the assumption of truth." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010); *see Iqbal*, 556 U.S. at 663 ("[T]he tenet that a court

must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."); *Larsen v. Berlin Bd. of Educ.*, 588 F.Supp.3d 247, 256 (D. Conn. 2022) ("[A] court need not credit conclusory or contradictory allegations.").

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed R. Civ. P. 12(b)(1). In doing so, the Court constructs all ambiguities and draws all inferences in Plaintiff's favor. However, under 12(b)(1) challenge, the "plaintiff must prove the existence of subject matter jurisdiction by a preponderance of the evidence." *Moser v. Pollin*, 294 F.3d 335, 339 (2d Cir. 2002). In making such a determination this Court is "free to consider materials extrinsic to the complaint." *Id*.

These mandates apply to represented parties and *pro se* litigants alike. Although courts construe *pro se* pleadings liberally, *see McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), a *pro se* complaint must still "state a claim that is plausible on its face." *Mancuso v. Hynes*, 379 Fed. Appx. 60, 61 (2d Cir. 2010); *see also Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (applying *Twombly* and *Iqbal* to *pro se* complaint); *King v. New York*, 2023 U.S. Dist. LEXIS 154734, *7-8 (E.D.N.Y. Aug. 31, 2023) (noting that a *pro se* plaintiff is not exempt from compliance with procedural and substantive law). Plaintiff fails to meet her burden.

<u>**DISCUSSION**</u>

### I.   Criminal Statutes

As a preliminary matter, Plaintiff cites several criminal statutes in her complaint: 18 U.S.C. §§ 241, 242, 245, 18 U.S.C. § 1503, and 34 U.S.C. § 30501. A private plaintiff – of course – "lacks standing to cause the criminal prosecution of others," as such right is reserved to the state.

*McCarthy v. Qatar Airways, Q.C.S.C.*, 2024 WL 1639596, at *3 (S.D.N.Y. Apr. 15, 2024). Nor can a plaintiff direct prosecutors to initiate a criminal action as such a decision is "immune from control or interference by citizen or court." *Connecticut Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). "[T]he decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981); *see Brown v. Alexander*, 2024 WL 5141852, at *2 (S.D.N.Y. Dec. 10, 2024) ("Plaintiff seems to seek the federal criminal prosecution of the defendants. If that is the case, the Court must dismiss those claims for such relief."). To the extent Plaintiff seeks relief under criminal statutes or otherwise requests this Court initiate criminal proceedings, those claims are dismissed.

## II.    Statute of Limitations

Plaintiff brings two untimely intentional tort claims – IIED and defamation. The allegations stem from the October 29, 2022, incident. Plaintiff filed suit on December 17, 2024 – more than two years later. Defamation and IIED are subject to a one-year statute of limitations. CPLR 215(3); *McKenzie v. Dow Jones & Co.*, 355 F. App'x 533, 536 (2d Cir. 2009); *Rentas v. Ruffin*, 816 F.3d 214, 226 (2d Cir. 2016). Accordingly, Plaintiff's IIED and defamation claims are time barred as to all Defendants.

## III.    Suffolk County Defendants

The Court will now address defenses specific to the Suffolk County Defendants. The sum of Plaintiff's allegations is that Officer Amaya responded to her 911 call, relayed the information given by Anthony Hernandez to LICH, refused to open a criminal investigation into Anthony Hernandez, and failed to acknowledge her during a subsequent 911 call. Essentially, Plaintiff is displeased with SCPD's service. Such is not actionable.

a. *Standing*

Suffolk County Defendants allege Plaintiff does not have Article III standing to sue SCPD or its officers. This Court agrees. Standing requires the Plaintiff to plead: (1) injury in fact; (2) traceable causation between Plaintiff's injury and Defendants' conduct; and (3) the Court's ability to redress the alleged injury. *Costin v. Glens Falls Hosp.*, 103 F.4th 946, 952 (2d Cir. 2024). Importantly, "[t]he party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Plaintiff fails to do so.

An injury in fact must be "concrete and particularized . . . not conjectural or hypothetical." *Id*. at 560 (citations and internal quotation marks omitted). Plaintiff's injury, however, is entirely conjectural. The Second Circuit has made clear that refusal to investigate or charge an individual does not constitute injury. *Ostrowski v. Mehltretter*, 20 F. App'x 87, 90 (2d Cir. 2001). Indeed, "the duty to investigate criminal acts (or possible criminal acts) almost always involves a significant level of law enforcement discretion." *Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 35 (2d Cir. 2010); *see also Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 756 (2005). Plaintiff's alleged mistreatment and SCPD's refusal to charge Anthony Hernandez does not constitute injury in fact – much less to the tune of $8 billion.

Moreover, putting aside the fact Plaintiff's defamation claim is time barred, the alleged reputational harm is too far attenuated. Plaintiff contends Officer Amaya damaged her reputation by repeating Anthony Hernandez's claim she was mentally ill to LICH. Plaintiff does not detail how this impacted her reputation. Where courts have recognized reputational injury to confer standing, the allegations were traceable to realized harm. *See, e.g., Joint Anti–Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 139 (1951) (NGO designated as "Communist" by Attorney General had standing because of "damage [to] the reputation"); *United States v. Accra Pac, Inc.,*

173 F.3d 630, 633 (7th Cir.1999) ( "being put on a blacklist . . . is treated as immediately redressible harm because it diminishes (or eliminates) the opportunity to practice one's profession even if the list . . . does not impose legal obligations."); *Gully v. Nat'l Credit Union Admin. Bd.*, 341 F.3d 155, 162 (2d Cir. 2003) (bank manager suffered injury when regulatory board found she engaged in misconduct, releasing prohibition order against her, "a death knell for [Manager's] career in an industry dependent on security and reliability."). Plaintiff's complaint here falls short of tangible harm.

Accordingly, "[w]hile it is certainly possible that reputational injuries could be sufficiently redressable to satisfy this element of Article III standing . . . the stain on [Plaintiff's] reputation is far too speculative to support constitutional standing." *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 113 (2d Cir. 2022).

Further, Plaintiff's request to terminate Officer Amaya fails as to redressability. "The taking of disciplinary action against government employees, including the invocation of the sanction of dismissal, is a matter of executive discretion, and is subject to judicial supervision only to the extent required to insure substantial compliance with the pertinent statutory procedures[.]" *McTiernan v. Gronouski*, 337 F.2d 31, 34 (2d Cir. 1964). Relevant here, "[t]he Civil Service Law and Unconsolidated Laws § 891 govern and establish comprehensive procedures for police discipline in New York State." *Rochester Police Locust Club, Inc. v. City of Rochester*, 71 Misc. 3d 438, 447, (N.Y. Sup. Ct. 2020). Thus, termination of Officer Amaya falls outside of this Court's purview.

Plaintiff does not establish Article III standing to sue SCPD. Proceeding with the utmost liberality considering Plaintiff's *pro se* status, this Court will address facial plausibility of the remaining claims.

b. *42 U.S.C. § 1983*

42 U.S.C. § 1983 does not create a positive right but provides a vehicle to defend federal rights granted elsewhere and mend constitutional injuries. *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004).  "To state a claim under § 1983, a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (citation and quotation marks omitted). Plaintiff's alleged constitutional violation is that SCPD failed to investigate and charge Anthony Hernandez and discriminated against her due to her disability. Neither allegation is actionable.

As stated *supra*, refusal to investigate or prosecute an alleged crime is not a constitutional injury. *See Harrington*, 607 F.3d 31; *Ostrowski*, 20 F. App'x at 90. Likewise, disability discrimination is not a constitutional injury. To be sure, "freedom from discrimination on the basis of disability is a right secured by statute . . ., not by the Constitution." *Fierro v NY City Dept. of Educ.*, 994 F. Supp. 2d 581, 590 (SDNY 2014) (citations and quotation marks omitted); *see also Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 368 (2001) ("If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause.").

i.  *Individual Capacity*

To the extent Plaintiff seeks to hold the Defendants liable in their individual capacities, there is insufficient personal involvement to sustain a facially plausible cause of action. "[I]n order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia,* the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). When a plaintiff sues a government official

-10-

in their individual capacity "personal involvement of [the] defendants [] alleged constitutional deprivations is a prerequisite . . . under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). A defendant must be "sufficiently involved in the alleged denial" of constitutional rights. *Id*. Generally, a defendant must have "directly participated in the infraction." *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986). Here, however, Plaintiff fails to allege any SCPD parties were actively involved in her alleged constitutional injury.

For example, Plaintiff names Commissioner Harris even though he had zero involvement in Plaintiff's alleged injury. Thus, Plaintiff seeks to hold Commissioner Harris liable under a *respondeat superior* theory. However, "§ 1983 does not authorize respondeat-superior liability." *Alwan v. City of New York*, 311 F. Supp. 3d 570, 587 (E.D.N.Y. 2018). To be sure, "an allegation that defendant is in a high position of authority . . . is, in and of itself, insufficient to impose liability absent proof of personal involvement in the constitutional deprivation." *Wallace v. Conroy*, 945 F. Supp. 628, 637–38 (S.D.N.Y. 1996).  Further, Plaintiff alleges Officer Amaya did not adequately investigate her domestic violence complaints. As stated, such is not actionable. Moreover, Plaintiff readily admits "Officer Amaya was not an active participant in the events that unfolded[.]" Compl. at pg. 7. Plaintiff's § 1983 claims fail as a matter of law.

c. *Disability Discrimination*

Plaintiff brings disability discrimination claims against SCPD under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. and the Rehabilitation Act, 29 U.S.C. § 701 et seq. Plaintiff claims she has a "condition called Mydriasis which causes [her] pupils to be fixed and dilated" and an unnamed "emotional disorder." Compl. ¶¶ 93, 97. Plaintiff contends SCPD discriminated against her based on her disabilities by denying "her services that would have been

-11-

routinely provided absent my disability and/or perceived impairment disability." *Id*. ¶ 100. What services Plaintiff was denied is entirely unclear.

To state an ADA or Rehabilitation Act claim, Plaintiff must allege "(1) that [s]he is a 'qualified individual' with a disability; (2) that [s]he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [her] disability." *Hargrave v. Vermont*, 340 F.3d 27, 34–35 (2d Cir. 2003); *see also Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (holding ADA and Rehabilitation act elements are the same). Plaintiff fails on all three prongs.

Plaintiff fails to state she is a qualified individual under the statute. "The ADA's definition of disability may be satisfied if a plaintiff demonstrates a record of an impairment that substantially limits one or more major life activities." *Levine v. Smithtown Cent. Sch. Dist.*, 565 F. Supp. 2d 407, 425 (E.D.N.Y. 2008) (internal quotation marks and citation omitted); *Kelly v NY State Off. of Mental Health*, 200 F Supp 3d 378, 394 (EDNY 2016) ("To show a record of impairment, a plaintiff must establish that she has a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having had such an impairment."). Here, Plaintiff merely claims she has a condition causing her pupils to dilate and an emotional disorder. Plaintiff does not suggest how her life is limited or impaired in any way. Accordingly, such "failure to plausibly allege a substantial limitation to a major life . . . precludes her from asserting that she has a record of disability." *Id*.

Next, Plaintiff fails to allege how SCPD discriminated against her. A plaintiff may bring an ADA claim alleging disparate treatment, disparate impact, or failure to provide a reasonable accommodation. *Tardif v. City of New York*, 991 F.3d 394, 404 (2d Cir. 2021). Plaintiff claims SCPD mistook her Mydriasis with a mental illness and disregarded her allegations. Compl. ¶ 96.

-12-

This Court is left wondering how SCPD could have treated Plaintiff any differently. SCPD responded to Plaintiff's 911 call, communicated with Plaintiff, reviewed her criminal allegations, and informed her there was insufficient evidence to charge Anthony Hernandez. Indeed, SCPD relied on LICH's lab results that no evidence of chemical ingestion was present. *Id*. ¶ 11. The only alternative would be for SCPD to formally charge Anthony Hernandez and as belabored at this point, Plaintiff is not entitled to direct such prosecution. Moreover, mere conclusory statements regarding disparate treatment cannot sustain an ADA or Rehabilitation Act claim. To be sure, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Further, Plaintiff fails to allege SCPD did not offer a reasonable accommodation. Indeed, it appears that Plaintiff was able to contact and communicate with SCPD throughout this saga. The record does not demonstrate Plaintiff was "denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant, by reason of the plaintiff's disability." *Askins v. City of New York: Police Dep't*, No. 1:22-CV-9277 (LTS), 2022 WL 17539171, at *5 (S.D.N.Y. Dec. 5, 2022).[3] At bottom, Plaintiff's discrimination claims fail.

  d.  *Tort Claims*

Although Plaintiff's intentional tort claims are time barred, she also failed to satisfy mandatory notice requirements. County Law § 52 (1) provides that every tort claim against a county must be "served in compliance with section fifty-e of the general municipal law." Pursuant to General Municipal Law § 50-e (1)(a), the notice of claim must be served "within ninety days

---

[3] To the extent Plaintiff seeks liability against any individual Defendants, such is not available under the ADA or Rehabilitation Act. *Yerdon v. Poitras*, 120 F.4th 1150, 1155 (2d Cir 2024); *Iwelu v. NY State Off. of Mental Health*, 2024 U.S. App. LEXIS 11742 (2d Cir May 15, 2024); *Spiegel v. Schulmann*, 604 F3d 72, 80 (2d Cir 2010).

after the claim arises" as "a condition precedent to the commencement of an action or special proceeding against a public corporation, . . . or any officer, appointee or employee thereof."

"Notice of claim requirements are construed strictly by New York state courts." *Hardy v NY City Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (citation and quotation marks omitted). New York law mandates the complaint plead "(1) the plaintiff has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed (and before the complaint was filed); and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim." *Hardy v NY City Health & Hosps. Corp.*, 164 F3d 789, 793 (2d Cir 1999). "Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Id*. at 794. No such notice of claim was satisfied, let alone plead, here. Such is fatal.

Even assuming *arguendo* Plaintiff did satisfy the notice requirements, the IIED and NIED allegations fail as a matter of law. To reiterate, Plaintiff alleges SCPD was dismissive to her and did not investigate Anthony Hernandez to the extent she desired.

IIED requires the Plaintiff to plead " '(1) extreme and outrageous conduct' with the '(2) intent to cause severe emotional distress,' that there was '(3) a causal connection between the conduct and the injury,' and that '(4) severe emotional distress' resulted." *Rentas v. Ruffin*, 816 F.3d 214, 227 (2d Cir. 2016) (citing *Bender v. City of New York,* 78 F.3d 787, 790 (2d Cir.1996). However, liability attaches only where the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized [society]." *Id*. at 790–91 (alteration in original). Being dismissive or otherwise rude to Plaintiff falls well short of this high bar.

Further, " 'public policy bars claims for intentional infliction of emotional distress against a governmental entity.' " *Calicchio v. Sachem Cent. Sch. Dist.*, 185 F. Supp. 3d 303, 314 (E.D.N.Y.

-14-

2016) (citing *Burbar v. Incorporated Village of Garden City*, 961 F.Supp.2d 462, 474 (E.D.N.Y.2013); *accord Frederique v. County of Nassau*, 168 F.Supp.3d 455, 2016 WL 1057008, *17 (E.D.N.Y. Mar. 11, 2016); *Shahzad v. County of Nassau*, 2013 WL 6061650, *8 (E.D.N.Y. Nov. 14, 2013).

As to NIED, a plaintiff must plead "(1) breach of a duty owed to plaintiff, which breach either unreasonably endangered plaintiff's physical safety or caused plaintiff to fear for his physical safety; (2) extreme and outrageous conduct; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Shearon v. Comfort Tech Mech. Co.*, 936 F. Supp. 2d 143, 156 (E.D.N.Y. 2013). However, "a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994); *accord Fiedler v. Incandela*, 222 F. Supp. 3d 141, 167 (E.D.N.Y. 2016). Accordingly, Plaintiff's NIED claim fails.

In sum, Plaintiff's claims against the Suffolk Couty Defendants fail on numerous grounds. Accordingly, the Suffolk Couty Defendants' motion to dismiss should be granted in its entirety.

### IV.    NYU Hospital Defendants

This Court will now turn to defenses specific to the NYU Defendants.

a. *Service of Process*

NYU Defendants allege Plaintiff failed to effectuate adequate service of process. This Court agrees. To reiterate, NYU Defendants are a combination of natural persons and corporate entities. Plaintiff served all NYU Defendants via certified mail. *See* Proof of Delivery, ECF No. 11. However, "[n]either the Federal Rules nor New York's CPLR permit service of a summons and

-15-

complaint by simply mailing a copy to a defendant via the U.S. Postal Service or an express delivery service." *Fairman v. Hurley*, 373 F. Supp. 2d 227, 232 (W.D.N.Y. 2005).

Service of process must be effectuated in the manner proscribed by Rule 4(e): (1) serving a copy of the summons and complaint to the defendant personally; (2) leaving a copy of the summons and complaint at the defendant's usually place of abode with an individual of suitable age and discretion; or (3) delivering a copy of the summons and complaint to an authorized agent or recipient. Fed. R. Civ. P. 4.

Service of process may also be effectuated through pertinent state law. Relevant here, CPLR § 312-a states, in relevant part:

> a summons and complaint, or summons and notice, or notice of petition and petition may be served by the plaintiff or any other person by mailing to the person or entity to be served, by first class mail, postage prepaid, a copy of the summons and complaint, or summons and notice or notice of petition and petition, together with two copies of a statement of service by mail and acknowledgement of receipt in the form set forth in subdivision (d) of this section, with a return envelope, postage prepaid, addressed to the sender.

N.Y. C.P.L.R. 312-a. Thus, under New York's CPLR service by mail "is not effective unless the defendant signs and returns an acknowledgment of receipt." *Fairman*, 373 F. Supp. 2d at 232 (citation and quotation marks omitted); *see also Shenko Elec., Inc. v. Hartnett*, 161 A.D.2d 1212, 1213 (1990) ("Service [by mail] is complete only when the acknowledgment of receipt in the form prescribed by CPLR 312–a(d) is mailed or returned to the sender."); *Uzamere v. Uzamere*, 957 N.Y.S.2d 639 (Sup. Ct. 2010), *aff'd*, 89 A.D.3d 1013, (2011) ("Serving defendants by certified mail only does not comply with the requirements of CPLR § 308[.]").

Plaintiff presents no evidence of CPLR compliance, i.e., "that copies of the summons and complaint were sent to the defendants, by first-class mail, together with, inter alia, two copies of a statement of service by mail and acknowledgment of receipt, and that the signed acknowledgment

-16-

of receipts were mailed or delivered to the plaintiff." *Klein v. Educ. Loan Servicing, LLC*, 71 A.D.3d 957, 958 (2010). Notably, "when a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010) (citation and quotation marks omitted). Plaintiff has failed to do so here.

It is axiomatic that improper service obviates a court of their jurisdiction. "In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir.) ("[T]he plaintiff's service of process upon the defendant must have been procedurally proper" to confer jurisdiction.).

Plaintiff may assert that such caviling over service is an academic endeavor due to Defendants' having received notice of this litigation and their active statues in the case. Not so. "Actual notice alone will not sustain the service or subject a person to the court's jurisdiction when there has not been compliance with prescribed conditions of service." *Buggs v. Ehrnschwender*, 968 F.2d 1544, 1548 (2d Cir. 1992) (citation and quotation marks omitted); *Morrison v. New York State Div. for Youth Child. & Fam. Ser.*, No. 98-CV-643, 2000 WL 532762, at *3 (N.D.N.Y. Apr. 25, 2000) ("Notice of suit received by means other than those authorized by statute or rule cannot serve to bring a defendant within the jurisdiction of the court."). Accordingly, Plaintiff's failure to effectuate adequate service of process prevents this Court from exercising personal jurisdiction over the NYU Defendants. Nevertheless, out of an abundance of caution this Court will address NYU Defendants' remaining defenses.

b. *42 U.S.C. § 1983*

As stated *supra*, a § 1983 claim must demonstrate: (1) the deprivation of a Constitutional rights (2) "*by a person acting under the color of state law.*" 42 U.S.C. § 1983 (emphasis added). Plaintiff makes a sparse assertion the NYU Defendants are liable under § 1983. Putting aside the fact that Plaintiff fails to assert a constitutional injury,[4] § 1983 is inapplicable because NYU Defendants are neither state actors, nor are they acting under the color of state law.

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law made possible only because the wrongdoer is clothed with the authority of state law." *Emanuele v. Town of Greenville*, 143 F. Supp. 2d 325, 331 (S.D.N.Y. 2001). The NYU Defendants are private natural persons and privately owned entities – not state actors. Importantly, "private actors and institutions, such as the hospitals . . . named as defendants in [Plaintiff's] original complaint, are generally not proper § 1983 defendants because they do not act under color of state law." *White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010).

There are rare instances where private actors can be liable under § 1983, however, there must be "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974). No such nexus exists here.

Further, to the extent Plaintiff alleges NYU Defendants are licensed or funded by the state, the argument fails. "[T]he presence of state funding or regulation, in the absence of some concerted action with state officials, does not transform a private party's actions into state action." *White*,

---

[4] This alone is grounds for dismissal. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Higgins v. City of Johnstown, N.Y.*, 20 F. Supp. 2d 422, 427 (N.D.N.Y. 1998).

369 F. App'x at 226; accord *Blum v. Yaretsky*, 457 U.S. 991 (1982). Mere funding or licensure is a far cry from those rare instances where private medical providers acted under the color of state law. For example, in *West v. Atkins*, the Supreme Court held that a physician who was under contract with a state-owned prison hospital to provide medical services to inmates acted under the color of state law. 487 U.S. 42 (1988). Such is not the case here.

  c. *Tort Claims*

As stated *supra*, Plaintiff's intentional tort claims are time barred. *See* CPLR 215(3); *McKenzie*, 355 F. App'x at 536; *Rentas*, 816 F.3d at 226. The claims are also facially deficient.

To reiterate, IIED liability attaches only where conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized [society]." *Bender,* 78 F.3d at 790–91 (alteration in original). Similarly, NIED requires the plaintiff to allege "extreme and outrageous conduct." *Shearon*, 936 F. Supp. 2d at 156, "of such intensity and duration that no reasonable person should be expected to endure it." *Brewton v. City of New York*, 550 F. Supp. 2d 355, 369 (E.D.N.Y. 2008).

In reviewing Plaintiff's complaint, this Court cannot find an allegation resembling extreme and outrageous conduct on behalf of NYU Defendants. Hospital staff treated Plaintiff and determined she was neither poisoned, nor demonstrated signs of domestic violence, thereafter, discharging her. Plaintiff makes an illusory allegation that several employees acted menacingly toward her upon discharge. In sum, NYU Defendants charted a course of treatment that did not align with Plaintiff's belief. While this Court in no way undermines domestic abuse, the NYU Defendants' conduct falls short of the high standard articulated in *Bender* and *Shearon*.

Accordingly, NYU Defendants motion to dismiss should be granted.

## V.      Leave to Replead

As a final point, Plaintiff should not be granted leave to replead. Generally, leave to replead should be given to *pro se* litigants if "the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991). Such is not the case here, where, accepting all allegations as true, Plaintiff's legal theory is without merit. "The problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## <u>CONCLUSION</u>

This Court respectfully recommends the District GRANT both motions to dismiss. Plaintiff should not be given leave to replead.

## <u>OBJECTIONS TO THIS REPORT AND RECOMMENDATION</u>

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See Marcella v. Cap. Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

/s/ _____

Steven Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
January 13, 2025

-20-